UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TREVON JOSEPH, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:20-CV-00062 |
| | § | |
| WALMART, INC., ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Defendant Wal-Mart Stores Texas, LLC's Motion to Dismiss Plaintiff's Third Amended Complaint ("Motion to Dismiss"). *See* Dkt. 22. After reviewing the motion, pleadings, and applicable law, I recommend that the Motion to Dismiss filed by Wal-Mart Stores Texas, LLC ("Walmart") be **GRANTED** in part and **DENIED** in part.

## BACKGROUND[1]

In 2017 and 2018, Plaintiff Trevon Joseph worked at a Walmart store located in Pearland, Texas. Although Joseph was a hard worker and diligent employee, two Walmart managers, Janine Vavrecka and Iqbal (last name unknown), got upset with him because of

---

[1] The background facts are taken from Plaintiff's Third Amended Complaint (Dkt. 19) and are accepted as true for purposes of ruling on this Motion to Dismiss. *See Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (cleaned up) (in reviewing a Rule 12(b)(6) motion to dismiss, a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff").

his desire to work the day shift rather than the night shift. Vavrecka went so far as to yell at Joseph and pounded the table in disgust because Joseph preferred working day shifts.

Joseph ultimately quit his job at Walmart. He still, however, continued to shop at the same Walmart store. On October 15, 2018, Joseph was at Walmart shopping. After he paid for his purchase, he told the checkout person that he was going to talk to human resources about the possibility of returning to work at Walmart. Joseph then walked toward the human resources office. At this time, Kimberly White, the store's loss prevention manager, "walked up and grabbed his basket, shaking it and yelling at him." Dkt. 19 at 4. "She got in his face while being hyper-aggressive." *Id.* Joseph then left the store.

Unbeknownst to Joseph, Walmart employees filed a complaint with the police, accusing him of armed robbery arising out of the October 15, 2018 incident. The police report claims that Joseph stuffed his pants with six boxes of Christmas lights and a tube of Crest toothpaste. Walmart employees also claimed that Joseph indicated that he had a weapon on him. Joseph vehemently denies he stole anything from Walmart.

On October 25, 2018, Joseph was back at Walmart shopping. He made his purchases, left the store, and started to drive away when he was pulled over by the police. Law enforcement officers told Joseph that he had been reported for shoplifting. They checked Joseph's bags, but verified that the items in his possession matched the Walmart store receipt. Joseph was, however, arrested for an outstanding warrant from the alleged October 15, 2018 armed robbery.

The criminal charges against Joseph turned his life upside down:

> The impact of the false charges of armed robbery is impossible to understate. Mr. Joseph was arrested in front of his family members for a crime he did not commit. He had a wife with a baby, who were relying on him to be a provider, which he now could not be. Mr. Joseph and his family were terrified he would go to prison for things he had never done. Mr. Joseph was taken to jail, and bail was set at $20,000. Mr. Joseph spent thousands of dollars obtaining a bond and then hiring an attorney to defend him. His vehicle was repossessed because he could not make payments. Moreover, Mr. Joseph could not work during the time a robbery charge was pending against him.

*Id.* at 6.

Joseph's criminal trial began on June 4, 2019. At trial, "it was admitted that Walmart did not have any witnesses testify and that the pictures did not show anything other than Mr. Joseph walking in the store. Accordingly, all charges were dismissed." *Id.* at 7–8.

Joseph claims that surveillance video produced in this litigation clearly demonstrates that the criminal charges brought against him were false and malicious. The October 15, 2018 video reportedly shows Joseph entering the store, shopping for infant formula, purchasing several items, and then trying to leave the store before being stopped by White. Nothing on the video remotely indicates that Joseph engaged in an armed robbery.

On January 6, 2020, Joseph filed this lawsuit in the 148th Judicial District Court of Brazoria County, Texas. Walmart timely removed the case to federal court. In the Third Amended Complaint, Joseph advances two causes of action: (1) malicious prosecution; and (2) negligent supervision and training. In bringing these claims, Joseph contends that

3

Walmart is liable for its employee's actions under the theory of *respondeat superior*. Walmart has moved to dismiss both claims under Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Although I must liberally construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded facts as true, I am not required to "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Secs. Corp. v. INSpire Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004). Rule 12(b)(6) motions to dismiss are "viewed with disfavor and [are] rarely granted." *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339 345 (5th Cir. 2020) (internal quotation marks and citation omitted).

## OBJECTIONS TO MOTION TO DISMISS EVIDENCE

Before exploring the merits of Walmart's Motion to Dismiss, I must address some objections Walmart has lodged to several exhibits attached to Joseph's response. Walmart specifically complains that Exhibit A (a Reporting Officer Narrative) and Exhibits D, E, and F (emails between counsel concerning discovery obligations) should not be considered at the motion to dismiss stage. I agree. In deciding whether to grant a Rule 12(b)(6)

motion, a district court may not "go outside the complaint." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). Generally, a "court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (US), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Because Exhibits A, D, E, and F are neither attached to the Third Amended Complaint nor referenced in the live pleading, I sustain Walmart's objections and will not consider those exhibits in connection with the pending Motion to Dismiss.

## ANALYSIS

**A.     Malicious Prosecution**

Joseph's first cause of action is for malicious prosecution. In seeking to dismiss this claim, Walmart argues that the facts, as pled, do not support a malicious prosecution claim against it. Walmart also argues that Joseph's effort to impute liability for malicious prosecution vicariously onto Walmart through the doctrine of *respondeat superior* fails because the intentional conduct at issue in this case was committed as a result of personal animosity, rather than in the accomplishment of a duty entrusted to the Walmart employees.

To properly plead a malicious prosecution claim, Joseph must sufficiently allege: (1) the commencement of a criminal prosecution against him; (2) causation (initiation or procurement) of the action by Walmart; (3) termination of the prosecution in his favor; (4) his innocence; (5) the absence of probable cause for the proceedings; (6) malice in filing the charge; and (7) damage to him. *See Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d

788, 792 n.3 (Tex. 2006); *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997).

In the Third Amended Complaint, Joseph contends that Walmart managers Vavrecka and White commenced a criminal prosecution for felony robbery against him by making false statements to the police. The allegations are spelled out in great detail in the 28-page live pleading. In short, Vavrecka and White allegedly told law enforcement that Joseph had stolen six boxes of Christmas lights and a tube of toothpaste from Walmart, with a total value of $32.10. Identifying themselves as loss prevention employees working for Walmart, Vavrecka and White purportedly reported to police that Joseph committed the crime with a dangerous weapon. The allegations, Joseph maintains, were spurious. "Neither Vavrecka [n]or White had probable cause to believe that Mr. Joseph committed a robbery or theft of the kind described. Their lies are clearly false as demonstrated by the failure to produce any tangible evidence, such as surveillance video." Dkt. 19 at 21. Joseph further claims that "[t]he case disposition shows that Mr. Joseph prevailed on all issues" at his criminal trial. *Id.* As a direct result of Walmart's conduct, Joseph alleges that he has suffered mental anguish and suffering, damage to his reputation, and attorney's fees and costs related to the bogus criminal charges brought against him. In short, these malicious prosecution allegations are, in my view, "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citation and footnote omitted). *See also Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual

6

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

In requesting dismissal of Joseph's malicious prosecution claim, Walmart argues that an employer may not be held liable for its employee's actions when an employee commits an act as a result of personal animosity. To put this argument into the proper context, let me step back for a moment and briefly discuss those situations in which a corporation can be held responsible for its employee's conduct. As a general rule in Texas, corporations are bound by the actions of their employees or agents when such actions are performed in the course and scope of their employment or agency. *See GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 617–18 (Tex. 1999). This principle is better known as the doctrine of *respondeat superior*. *See Fort Worth Transp. Auth. v. Rodriguez*, 547 SW.3d 830, 846 (Tex. 2018) ("Under our law, the doctrine of *respondeat superior* makes a principal liable for the conduct of its employee or agent."); *Respondeat Superior*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency.").

An employer is rarely held vicariously liable under the doctrine of *respondeat superior* for intentional torts "perpetrated by its employee because such acts are not ordinarily within the course and scope of an employee's authority or employment." *Wrenn v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489, 494 (Tex. App.—Fort Worth 2002, no pet.). Although it is relatively uncommon, an employer may be held responsible for the torts of its employees "even though the employee's tort is intentional when the act, although not

7

specifically authorized by the employer, is closely connected with the servant's authorized duties." *GTE Sw.*, 998 S.W.2d at 617–618. Texas case law provides several examples in which an employer might be held vicariously liable for the intentional torts of its employees. *See Durand v. Moore*, 879 S.W.2d 196, 199 (Tex. App.—Houston [14th Dist.] 1994, no writ) (affirming judgment that a night club was vicariously liable for the assault of a customer by a bouncer who had authority to select customers for admittance because "the tortious conduct [was] of the same general nature as that authorized or incidental to the conduct authorized," and therefore was within the scope of employment); *Frito–Lay Inc. v. Ramos*, 770 S.W.2d 887, 889 (Tex. App.—El Paso 1989), *rev'd on other grounds*, 784 S.W.2d 667 (Tex. 1990) (district sales manager "being responsible for what he thought was company equipment" was acting within the scope of employment when he pushed a customer while trying to retrieve equipment); *Baker Hotel of Dall., Inc. v. Rogers*, 157 S.W.2d 940, 943 (Tex. Civ. App.—Dallas 1941, writ ref'd w.o.m.) (holding that employer could be liable for employee's assault, even if "unnecessary, ill-advised and wanton," because employer "set in motion the agency that resulted in the wrong" and the assault "grew out of the exercise of an authority that was conferred upon [the employee]"). "Ultimately, then, an employer will be held liable for its employee's intentional torts that 'stem[] directly from the employee's exercise (however inappropriate or excessive) of a delegated right or duty.'" *Doe v. Apostolic Assembly of Faith in Christ Jesus*, 452 F. Supp. 3d 503, 518 (W.D. Tex. 2020) (quoting *ANA, Inc. v. Lowry*, 31 S.W.3d 765, 770 (Tex. App.—Houston [1st Dist.] 2000, no pet.)). *See also G.T. Mgmt., Inc. v. Gonzalez*, 106 S.W.3d 880, 884 (Tex. App.—Dallas 2003, no pet.) ("[A]n employer may be vicariously

8

liable for an intentional tort when the act, although not specifically authorized by the employer, is closely connected with the employee's authorized duties, that is, if the intentional tort is committed in the accomplishment of a duty entrusted to the employee, rather than because of personal animosity.").

Walmart takes the position that Joseph has pled himself out of a malicious prosecution claim against Walmart by alleging that Vavrecka's and White's conduct arose out of personal animosity and hatred toward him. *See GTE Sw.*, 998 S.W.2d at 618 (explaining that an employer may not be held liable for an employee's actions committed out of personal animosity). According to Walmart, there it is "no question whatsoever" that Vavrecka's and White's actions "were not in furtherance of Walmart's business nor for the accomplishment of an object for which White and Vavrecka were hired." Dkt. 22 at 13. I completely disagree. At the motion to dismiss stage, my review is limited to whether Joseph has sufficiently alleged that Vavrecka and White were acting in the course and scope of their job responsibilities when they falsely reported to law enforcement that Joseph had committed an armed robbery. After reviewing the Third Amended Complaint, it is clear to me that Joseph has adequately made such allegations:

> 4.36   The actions complained of here, by each employee, were in the scope of that employee's general authority, were in furtherance of Walmart's business, and were for the accomplishment of objects for which each employee was employed. In short, Walmart is responsible for the actions of its managers. Managers here include at least Iqbal, Kim White, and Janine Vavrecka. On information and belief, they each had job duties with the general authority to decide and to enforce: who works for the store, who is in the store, what customers do in the store, how to interact with customers, how to interact with employees or former employees, when to contact law enforcement, what to report to law enforcement, how to train employees, and how to supervise employees. Moreover, Kim White is a manager over loss

prevention (also known as asset protection), and Taisha Blosser is either a manager or employee who also works in loss prevention. On information and belief, each manager and employee named herein has responsibilities over loss prevention. The general authority and business purpose of loss prevention includes investigating potential theft from the store, stopping that theft (including viewing surveillance of suspected thieves), removing from the store anyone deemed not to be desirable and, if decided, reporting such persons to police. Loss prevention managers and employees are instructed to contact police and are given authority to decide what to report. They also have authority to decide what evidence to provide to investigators, including police and district attorney offices, as well as other Walmart employees. Moreover, loss prevention managers/employees have authority and decision-making power to investigate reports of false allegations and how to respond to such reports. All these purposes and roles are within the furtherance of Walmart's business as a retail store open to the public where a number of employees must be managed, trained and supervised, as they interact with customers, each other, and police.

4.37   In the performance of their jobs, Walmart's managers/employees Iqbal, Kim White, and Janine Vavrecka decided that they did not want Trevon Joseph shopping at Walmart or returning to employment at Walmart. Their motivations included personal malice, as explained above. However, it also included their assessment – however biased – that Mr. Joseph was undesirable. This was both malicious and within their general authority and in furtherance of Walmart's business. Specifically, Kim White and Janine Vavrecka made false allegations to police without probable cause – including false reports of shoplifting and a false report of felony robbery – and such false reporting was within the scope of their employment, general authority, and in furtherance of what they believed to be Walmart's purpose assigned to them of deciding and enforcing who is in the store.

Dkt. 19 at 16–17.

All I need to decide at this early stage of the case is whether the allegations raised in the Third Amended Complaint, which I am required to accept as true, sufficiently make out a claim that several Walmart employees committed an intentional tort while acting within the scope of their employment. *See Allen v. Orleans Elec. Constr., Inc.*, No. 07-7259, 2008 WL 505005, at *3 (E.D. La. Feb. 21, 2008) (finding, on a motion to dismiss,

that "[i]t is not evident on the face of the Complaint that [the assailant's] alleged assault on [the plaintiff] was outside the scope of his employment," and that "[a]lthough it remains to be seen whether [the plaintiff] can establish the elements of *respondeat superior*, his allegations are sufficient to state a claim at this juncture"). Whether Vavrecka and White actually acted out of personal animosity or out of duty to Walmart is a factual question that must be determined as this case progresses. *See Bodin v. Vagshenian*, 462 F.3d 481, 485 (5th Cir. 2006) (whether an employee acted in the course and scope of employment under Texas law "is generally a question of fact, not law"); *Hous. Transit Co. v. Felder*, 208 S.W.2d 880, 882 (Tex. 1948) (holding that whether an intentional tort is committed within the scope of employment is a factual question depending "in large measure" on the assailant's motivation in acting). Accordingly, I recommend that Walmart's request to dismiss the malicious prosecution claim be denied.

## B. Negligent Supervision and Training

Joseph also asserts a cause of action for negligent supervision and training. In making this claim, Joseph argues that

> Walmart failed to have a policy to dispose of false arrests, and Walmart failed to have any trained, objective person to supervise their managers/employees who made criminal accusations. Walmart's own negligence and lack of meaningful supervision gave its managers/employees the ability to empower themselves by weaponizing the police with false accusations, and without fear of company discipline. The charges against Mr. Joseph should never have been made, and they should certainly not have continued. Walmart's negligent supervision and training caused harm to Mr. Joseph.

Dkt. 19 at 24.

Under Texas law, a negligent supervision and training claim is a simple negligence cause of action based on an employer's direct negligence rather than through vicarious liability. *See Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 49 (Tex. App—Fort Worth 2002, no pet.); *LaBella v. Charlie Thomas, Inc.*, 942 S.W.2d 127, 137 n.9 (Tex. App.—Amarillo 1997, writ denied). The basis for a negligent supervision and training claim is the duty created by the foreseeability of unreasonable risk to others by an employer who knows or should know his employee is incompetent or unfit. *See Houser v. Smith*, 968 S.W.2d 542, 546 (Tex. App.—Austin 1998, no pet.); *THI of Tex. at Lubbock I, LLC v. Perea*, 329 S.W.3d 548, 573 (Tex. App.—Amarillo 2010, pet. denied). To impose liability on an employer for negligent supervision, "a plaintiff must show that an employer's failure to supervise its employees caused his injuries." *Dangerfield v. Ormsby*, 264 S.W.3d 904, 913 (Tex. App.—Fort Worth 2008, no pet.). "To establish a claim for negligent training, a plaintiff must prove that a reasonably prudent employer would have provided training beyond that which was given and that failure to do so caused his injuries." *Id.* at 912.

In this lawsuit, Joseph argues that Walmart owed him a duty to ensure that its employees did not falsely accuse him of a crime. Texas law does not support this stance. The intentional tort of malicious prosecution has stringent standards for recovery. *See Wal-Mart Stores, Inc. v. Medina*, 814 S.W.2d 71, 73 (Tex. App.—Corpus Christi 1991, writ denied). "To allow the existence of a duty not subject to the element of maliciousness would convert the tort of malicious prosecution into negligent prosecution. This would discourage citizen participation in criminal investigations and prosecutions and threaten the balance between protecting against wrongful prosecution and encouraging the reporting

12

of a crime." *Murphy USA, Inc. v. Rose*, No. 12-15-00197-CV, 2016 WL 5800263, at *7 (Tex. App.—Tyler Oct. 5, 2016, no pet.) (citation omitted). As a result, "courts have refused to recognize a cause of action for negligence or gross negligence independent from a claim for malicious prosecution when it is brought to recover for damages suffered as a result of an allegedly wrongful criminal prosecution." *Lewis v. Cont'l Airlines, Inc.*, 80 F. Supp. 2d 686, 697 (S.D. Tex. 1999) (collecting cases). *See also Charlie Thomas Chevrolet, Ltd. v. Martinez*, 590 S.W.3d 9, 16 (Tex. App.—Houston [1st Dist.] 2019, no pet.) ("A plaintiff cannot circumvent the stringent standards for recovery of the intentional torts of false imprisonment and malicious prosecution by pleading other claims based on the same facts."); *Smith v. Sneed*, 938 S.W.2d 181, 185 (Tex. App.—Austin 1997, no writ) (declining to recognize a duty "outside the torts of malicious prosecution and defamation not to falsely accuse someone of criminal wrongdoing").

Joseph's negligent training and supervision claim is predicated on the same facts and seeks to recover the same damages he allegedly suffered as a result of the alleged malicious prosecution. *See* Dkt. 19 at 18 ("Walmart's own negligent training and supervision further contributed to and caused the harm suffered by Mr. Joseph due to Walmart's malicious prosecution."). As a matter of law, a negligence claim predicated on a malicious prosecution claim cannot stand. *See Smith v. Wal-Mart Stores, Inc.*, No. 4:17-CV-02579, 2019 WL 5457798, at *8–9 (S.D. Tex. Oct. 24, 2019) (granting summary judgment for Walmart on a negligent supervision and training claim when plaintiff simultaneously attempted to bring a malicious prosecution claim); *Medina*, 814 S.W.2d at 73–74 ("[T]here is no recovery in tort for damage caused by an incorrect, but not malicious

13

prosecution."). I, therefore, recommend that Joseph's negligent supervision and training claim be dismissed.[2]

## CONCLUSION

For the reasons identified above, I recommend that Walmart's Motion to Dismiss (Dkt. 22) should be **GRANTED in part** and **DENIED in part**. In particular, I recommend that the motion be denied with respect to the malicious prosecution claim and granted with respect to the negligent supervision and training claim.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED on this 17th day of November 2020.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

[2] Walmart makes several additional arguments for why the negligent supervision and training claiming should be dismissed. Given that I have concluded that Texas law does not allow Joseph to pursue a negligence claim centered on a malicious prosecution claim, I need not address those other arguments.